UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

TOBIAS M. P.,[1]

             Plaintiff,

        v.

FRANK BISIGNANO, [2]
Commissioner of Social Security,

             Defendant.

Case No. 2:25-cv-02608-JDE

MEMORANDUM OPINION AND ORDER

On March 25, 2025, Plaintiff Tobias M. P. ("Plaintiff") filed a Complaint seeking review of the denial of his application for child's insurance benefits ("CIB") and supplemental security income ("SSI"). The Court has reviewed Plaintiff's opening brief (Dkt. 14, "Pl. Br."), the Commissioner's answering brief (Dkt. 16, "Def. Br."), and the Administrative Record (Dkt. 9, et seq., "AR"). The matter is now ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano, Commissioner of the Social Security Administration, is substituted as defendant. See Fed. R. Civ. P. 25(d).

## I.

## BACKGROUND

On April 27, 2022, Plaintiff applied for CIB under Title II of the Social Security Act as a disabled adult based on the earnings of his mother, alleging disability beginning on July 1, 2017. AR 15. He filed an application for SSI the same day with the same alleged disability onset date. Id. Plaintiff was born on April 2, 2003, making him younger than 22 years old at the alleged onset date. AR 17. After the applications were denied initially and on reconsideration, an Administrative Law Judge ("ALJ") held a hearing on March 8, 2024, at which Plaintiff, represented by counsel, and a vocational expert ("VE") testified. AR 15

On March 27, 2024, the ALJ found Plaintiff was not disabled. AR 26. The ALJ found Plaintiff had not engaged in substantial gainful activity since July 1, 2017. AR 17. The ALJ determined Plaintiff suffered from the following severe impairments: Type I diabetes, Lyme disease, hypogammaglobulinemia, chronic inflammatory polyneuropathy, depression, and chronic fatigue syndrome. AR 18. The ALJ assessed Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. Id.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work,[3] with the following limitations:

> he can perform occasional postural activities, but cannot climb ladders, ropes, or scaffolds. He cannot work around unprotected heights. He is able to perform simple tasks in a routine

---

[3] "Light work" is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

environment. He cannot perform work requiring public interaction. He cannot perform fast paced work, such as rapid assembly or conveyor belt work.

AR 20. The ALJ found, in light of Plaintiff's age, education, work experience, RFC, and the VE's testimony, jobs existed in significant numbers in the national economy that he can perform, including cleaner housekeeper (Dictionary of Occupational Titles ["DOT"] 323.687-014), garment sorter (DOT 222.687-014), and mail clerk (DOT 209.687-026), rendering him not disabled. AR 25.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the agency's final decision. AR 1-3.

## II.

## LEGAL STANDARDS

### A.    Standard of Review

Under 42 U.S.C. § 405(g), this Court may review a decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id.

To assess whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even

3

when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021). Lastly, even if an ALJ errs, the decision will be affirmed if the error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted); Smith, 14 F.4th at 1111 (even where the "modest burden" of the substantial evidence standard is not met, "we will not reverse an ALJ's decision where the error was harmless").

A child who is 18 or older may receive benefits based on disability if: (1) he has an impairment or combination of impairments that meets the definition of disability for adults; (2) the disability began before age 22; and (3) the adult child's natural parent worked long enough to be insured and is receiving retirement or disability benefits or is deceased. 42 U.S.C. §§ 402(d), 416(e); 20 C.F.R. § 404.350(a). To be eligible for child's insurance benefits under Title II of the Act, Plaintiff must establish disability before April 2, 2025, the date he turned 22, and show that such disability was continuous and uninterrupted until he filed his application for child's insurance benefits in 2017. Smolen v. Chater, 80 F.3d 1273, 1280 (9th Cir. 1996) ("the claimant must be disabled continuously and without interruption beginning before her twenty-second birthday until the time she applied for child's disability insurance benefits"), superseded on other grounds by 20 C.F.R. § 404.1529(c)(3)).

**B.    The Five-Step Sequential Evaluation**

When a claim reaches an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers if the claimant now works at "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to assess whether the claimant's impairments render the claimant disabled because they meet or equal any of the listed impairments in the Social Security Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a listed impairment, before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). After assessing the RFC, the ALJ proceeds to the fourth step to determine if, in light of the claimant's RFC, the claimant can perform past relevant work as actually or generally performed. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999); 20 C.F.R. §§ 404.1566(a), 416.966(a). A claimant who can do other work is not disabled; a claimant who cannot do other work and meets the duration requirement is disabled. See Tackett, 180 F.3d at 1099; see also Woods v. Kijakazi, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing the steps and noting that "[t]he recent [2017] changes to the Social Security regulations did not affect the familiar 'five-step sequential evaluation process.'").

5

The claimant generally bears the burden at steps one through four to show the claimant is disabled or meets the requirements to proceed to the next step and bears the ultimate burden to show disability. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a limited burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.

## DISCUSSION

Plaintiff raises the following issues, reordered below:

Issue No. 1: Whether the ALJ properly rejected Plaintiff's subjective symptom testimony.

Issue No. 2: Whether the ALJ properly formulated Plaintiff's RFC.

**A. Subjective Symptom Testimony**

Plaintiff argues that the ALJ failed to articulate clear and convincing reasons supported by substantial evidence for rejecting his symptom testimony. Pl. Br. at 11-18. The Commissioner counters that the ALJ properly discounted Plaintiff's subjective statements on four asserted grounds. Def. Br. at 2-13.

1.    Applicable Law

When a disability claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation and internal quotations omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also 20 C.F.R. § 404.1529(a). "The standard isn't whether [the federal] court is

convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). "This standard is 'the most demanding required in Social Security cases.'" Smith, 14 F.4th at 1112 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); see also Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) ("This [standard] is not an easy requirement to meet.").

The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (alterations in original) (citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (citation omitted); see also SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (the ALJ's "determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms"). If the ALJ's assessment of the testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Smartt, 53 F.4th at 500 (citing Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)). "Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009).

2.    Plaintiff's Testimony

Plaintiff testified at the hearing and completed an "Exertional Activities Questionnaire" (AR 262-80) which are summarized as follows. He has been

diagnosed with Lyme disease and Type I diabetes. AR 265-66. He claims symptoms of anxiety and obsessive-compulsive disorder ("OCD"). AR 42. He experiences nausea, faintness, brain fog, weakness, hot flashes, shortness of breath, difficulty standing, fatigue, and bodily pain. AR 262. He reported having good days and bad days. AR 41. On his bad days, he would lay down for as much as 18 to 20 hours. Id. On his good days, which he stated are "very rare," he would sleep or be in bed for around 14 hours. Id. He can sit at the computer for almost an hour before having to lay down again. AR 52. He testified to having "looping thoughts" and needing to wash his hands a lot. AR 42-43.

Plaintiff typically keeps himself busy by listening to music and watching movies. AR 47. He also enjoys making art. AR 49. He has taken a few junior college classes but has struggled with attendance and tardiness due to his fatigue and pain. AR 38-39, 49-50.

Plaintiff uses an insulin pump for his diabetes. AR 42. Despite using the insulin pump, he still has hypoglycemic episodes in which he feels as if he "can hardly do anything." AR 44. He also receives weekly IV infusions. AR 43. He reported feeling worse after the infusions, with headaches and body aches, but that this has not happened recently. AR 44. He takes Corlanor and Hydrocortisone for hypo tachycardia. AR 47-48. Finally, he takes Prozac for his anxiety and OCD. AR 47.

3.    Analysis

After summarizing his testimony, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 21. The ALJ found Plaintiff's "subjective complaints and alleged limitations are disproportionate to the objective findings." Id.

The Commissioner argues the ALJ's properly discounted Plaintiff's symptom testimony on four grounds: (1) inconsistency with the objective medical evidence; (2) inconsistency with Plaintiff's daily activities; (3) inconsistency with prior administrative findings; and (4) Plaintiff's symptoms are controlled with treatment. The Court considers each in turn.

i. Objective Medical Evidence

As noted, the ALJ discounted Plaintiff's subjective symptom testimony because it was "not entirely consistent with" and "disproportionate to" the objective medical evidence. AR 21. "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498. However, a lack of corroborating medical evidence (as opposed to contradictory medical evidence) cannot provide the sole basis for rejecting subjective symptom testimony. See Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) ("an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence'" (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)). Further, in rejecting subjective symptom testimony, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (citation omitted). Stated differently, the ALJ must "show his work" by comparing the inconsistencies between specific symptom testimony and contradictory medical evidence. Smartt, 53 F.4th at 498-99.

Here, the ALJ failed to explain what parts of Plaintiff's symptom testimony were contradicted by the objective medical record, as opposed to merely not supported by the record. The opinion cites several portions of the medical record, such as Plaintiff reporting to his endocrinologist "no chronic pains, headaches, visual disturbance, hypo/hyperactivity, sleep problems,

shortness of breath, palpitations, sweat, dizziness, change in hair/nails, diarrhea, nausea/vomiting, heat/cold intolerance, or other cyclic symptoms." AR 21 (citing AR 802). But the opinion does not explain how such reports contradict Plaintiff's symptom testimony, in which he describes having good days and bad days, and in which he describes severe fatigue. At best, the reports reflect a lack of corroboration of some symptoms, not contradictory evidence.

Under Smartt and Trevizo, the mere lack of corroborating medical evidence, as opposed to contradictory medical evidence, is not a proper basis on its own upon which to discount symptom testimony. The opinion does not recount objective medical evidence that contradicts Plaintiff's testimony and further fails to tie any alleged inconsistencies in the medical record to specific, contrary symptom testimony. See Smartt, 53 F.4th at 498-99. The ALJ's finding that Plaintiff's symptom testimony is "not substantiated by the objective medical evidence" is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's testimony here.

### ii. Daily Activities

The Commissioner argues that an ALJ "may consider a claimant's daily activities in evaluating his subjective symptom testimony of debilitating impairment. Dkt. 16 at 7 (citations omitted) (internal pagination). Of course, the Commissioner is correct as a general matter. An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." Lingenfelter, 504 F.3d at 1040. Yet, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016; Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that

a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her [testimony] as to her overall disability."). Thus, in such circumstances, an ALJ must make appropriate findings, supported by the record.

The Commissioner next recounts that the ALJ "observed that Plaintiff's daily activities, particularly in the past year, were at odds with his alleged debilitation." Def. Br. at 7. This statement is not entirely correct. The ALJ on several occasions noted that Plaintiff at times had a "marked limitation in activities of daily living" and "difficulty completing some activities of daily living." AR 19, 21. In other parts of the opinion, however, the ALJ noted Plaintiff's ability to prepare simple meals, exercise, attend college courses, and monitor his diabetes. AR 19, 21. What the ALJ did not do, however, is affirmatively base his decision to discredit Plaintiff's symptom testimony on Plaintiff's activities of daily living. "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225. As the ALJ did not expressly state he was relying on Plaintiff's activities of daily living to discredit his symptom testimony, the Court cannot affirm on that basis.

### iii. Prior Administrative Findings

Next, the Commissioner contends the prior administrative findings (PAMFs) on reconsideration were inconsistent with Plaintiff's subjective physical symptoms. Def. Br. at 11. Although the ALJ cited the PAMFs and recounted some of those findings, including a finding within one of the PAMFs that Plaintiff's "reported fatigue was out of proportion with the objective medical evidence" (AR at 22-23), as with the activities of daily living, the ALJ did not expressly cite the PAMFs as a basis for his decision to reject Plaintiff's symptom testimony. See Brown-Hunter, 806 F.3d at 494 (finding that the

11

ALJ's "summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible."). As such, the citation to the PAMFs is not a clear and convincing reason for discounting Plaintiff's symptom testimony.

iv. <u>Controlled by Treatment</u>

Finally, the Commissioner argues the ALJ properly discounted Plaintiff's testimony because his "physical and mental impairments were effectively treated." Def. Br. at 9. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for . . . benefits." <u>Warre v. Comm'r of Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006); <u>Odle v. Heckler</u>, 707 F.2d 439, 440 (9th Cir. 1983). Here, the Court agrees with the Commissioner that the ALJ properly found that Plaintiff's Type I diabetes has been effectively controlled by treatment. However, as the ALJ noted, both Plaintiff and his mother recounted "he experiences severe fatigue and sleeps 18-20 hours a day due to 'several medical conditions including Lyme disease and autoimmune issues.'" AR at 21. Although the ALJ recites treatment for Plaintiff's Lyme disease and some of the other ailments, with the treatment for Lyme disease causing "improvement in [Plaintiff's] joints," the ALJ does not make a finding, supported by substantial evidence, that Plaintiff's fatigue and sleeping for periods that would not allow for full time work have been effectively controlled. As such, effective treatment is not a valid reason to discount all of Plaintiff's symptom testimony as it is not supported by substantial evidence.

Accordingly, the ALJ erred by failing to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony and such error is not harmless as it cannot be said that it is "inconsequential to the ultimate nondisability determination," or that "the

12

agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted). Further, having found error that was not harmless in the ALJ's partial rejection of Plaintiff's symptom testimony, as the assessment of such testimony on remand may bear on the ALJ's formulation of Plaintiff's RFC, the Court does not reach that other issue in this opinion.

## B. Remand Is Appropriate

The Court has the discretion to remand the matter for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where further administrative proceedings would serve no useful purpose or where the record has been fully developed, a court may direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). Remand for further proceedings is appropriate when "outstanding issues must be resolved before a proper determination can be made" and it is not clear from the record that the claimant is disabled. See Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003).

Here, the Court concludes remand for further proceedings is warranted to reassess Plaintiff's subjective symptom testimony. Because the record raises questions about the extent to which Plaintiff's symptoms render him disabled, remand on an "open record" is appropriate before a proper disability determination can be made by the ALJ. See Brown-Hunter, 806 F.3d at 496.

Accordingly, on remand, the ALJ shall reassess Plaintiff's reported symptoms and, if necessary, reassess Plaintiff's RFC, and if warranted, proceed through the remaining steps of the disability analysis to determine what work, if any, Plaintiff is capable of performing that exists in significant numbers in the national economy.

## IV.

## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: January 20, 2026

_____
JOHN D. EARLY
United States Magistrate Judge

14